AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

__Eastern__ DISTRICT OF __Michigan__

UNITED STATES OF AMERICA

v.

Matthew Mercer-Kinser
61 East Street
Oxford, Michigan

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 08-30235

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __April 30, 2008__ in __Oakland__ county, in the __Eastern__ District of __Michigan__ defendant(s) did, (Track Statutory Language of Offense)

knowingly distribute child pornography, and did knowingly possess child pornography that had been previously transported in interstate commerce; to wit, on or about April 30, 2008, in Oxford, Michigan, defendant possessed child pornography images on a personal computer, which images he sent to an undercover Australian Federal Police Officer via the Internet.

in violation of Title __18__ United States Code, Section(s) __2252(a)(2) and (5)(B)__.

I further state that I am a(n) __Special Agent of the FBI__ and that this complaint is based on the following facts:
Official Title

See Attached Affidavit hereby incorporated by reference as if fully restated herein.

☒ Yes     ☐ No

FILED
MAY 20 2008
CLERK'S OFFICE
DETROIT

Continued on the attached sheet and made a part hereof:

Signature of Complainant
AUSA - John O'Brien                                    Brett E. Leatherman
Sworn to before me and subscribed in my presence,      Special Agent
                                                       Federal Bureau of Investigation

May 20, 2008                                at    Detroit, Michigan
Date                                              City and State

Mona K. Majzoub, United States Magistrate Judge
Name & Title of Judicial Officer                  Signature of Judicial Officer

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

IN THE MATTER OF THE ARREST OF:    )
                                   )
MATTHEW MERCER aka                 )
                                   )
MATTHEW MERCER-KINSER              )
                                   )
                                   )
                                   )
_____)

**AFFIDAVIT**

I, Brett E. Leatherman, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Detroit Division, Michigan, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. Your affiant is a Special Agent of the Federal Bureau of Investigation (FBI) and has been employed as such since May 2003. Your affiant is currently assigned to the Detroit Division of the FBI, Oakland County Resident Agency, located in Troy, Michigan. Your affiant's duties include the investigation of various violations of federal criminal law, including matters involving the online exploitation of children, particularly in violation of Title 18, United States Code (U.S.C.) Sections 2252 and 2252A, which criminalize the possession, receipt, and transmission of child pornography.

1

2. Your affiant is a "federal law enforcement officer" within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure.

3. Your affiant makes this affidavit in support of an application for a warrant to arrest Matthew Mercer, also known as Matthew Mercer-Kinser (hereinafter referred to as "Mercer").

4. The statements in this Affidavit are based in part on information provided by law enforcement officials with the Australian Federal Police (hereinafter referred to as AFP), Special Agents of the FBI, other law enforcement officers, information provided by other personnel specially trained in the seizure and analysis of computers and electronic media, my investigation of this matter, and my experience and training as a Special Agent of the FBI. Since this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that Matthew Mercer committed acts in violation of 18 U.S.C. § 2252.

### DEFINITIONS

5. The following definitions apply to this Affidavit, as well as Attachment A to this Affidavit:

   a. "Child Erotica," as used herein, means materials or

2

1  items that are sexually arousing to persons having a
2  sexual interest in minors but that are not, in and of
3  themselves, obscene or that do not necessarily depict
4  minors in sexually explicit poses or positions;
5  b. "Child Pornography," means any visual depiction,
6  including any photograph, film, video, picture, or
7  computer or computer-generated image or picture,
8  whether made or produce by electronic, mechanical, or
9  other means, of sexually explicit conduct, where the
10  production of such visual depiction involves the use of
11  a minor engaging in sexually explicit conduct. (See 18
12  U.S.C. § 2256(8)(a) only);
13  c. "Visual depictions" include undeveloped film and
14  videotape, and data stored on computer disk or by
15  electronic means, which is capable of conversion into a
16  visual image. (See 18 U.S.C. § 2256(5));
17  d. "Sexually explicit conduct" means actual or simulated
18  (a) sexual intercourse, including genital-genital,
19  oral-genital, or oral-anal, whether between persons of
20  the same or opposite sex; (b) bestiality; (c)
21  masturbation; (d) sadistic or masochistic abuse; or (e)
22  lascivious exhibition of the genitals or pubic area of
23  any persons. (See 18 U.S.C. § 2256(2));
24  e. "Computer," as used herein, is defined pursuant to 18
25  U.S.C. § 1030(e)(1), as an "electronic, magnetic,
26  optical, electrochemical, or other high speed data
27  processing device performing logical or storage
28  functions, and includes any data storage facility or

1  communications facility directly related to or
2  operating in conjunction with such device;"
3  f. "Computer hardware," as used herein, consists of all
4  equipment which can receive, capture, collect, analyze,
5  create, display, convert, store, conceal, or transmit
6  electronic, magnetic, or similar computer impulses or
7  data. Computer hardware includes any data-processing
8  devices (including, but not limited to, central
9  processing units, internal and peripheral storage
10 devices such as fixed disks, external hard drives,
11 floppy disk drives and diskettes, and other memory
12 storage devices); peripheral input/output devices
13 (including, but not limited to, keyboards, printers,
14 video display monitors, and related communications
15 devices such as cables and connections), as well as any
16 devices, mechanisms, or parts that can be used to
17 restrict access to computer hardware (including, but
18 not limited to, physical keys and locks);
19 g. "Computer software," as used herein, is digital
20 information which can be interpreted by a computer and
21 any of its related components to direct the way they
22 work. Computer software is stored in electronic,
23 magnetic, or other digital form. It commonly includes
24 programs to run operating systems, applications, and
25 utilities;
26 h. "Computer-related documentation," as used herein,
27 consists of written, recorded, printed, or
28 electronically stored material which explains or

|   |   |
|---|---|
| 1 | illustrates how to configure or use computer hardware, |
| 2 | computer software, or other related items; |
| 3 | i. "Computer passwords and data security devices," as used |
| 4 | herein, consist of information or items designed to |
| 5 | restrict access to or hide computer software, |
| 6 | documentation, or data.  Data security devices may |
| 7 | consist of hardware, software, or other programming |
| 8 | code.  A password (a string of alpha-numeric |
| 9 | characters) usually operates a sort of digital key to |
| 10 | "unlock" particular data security devices.  Data |
| 11 | security hardware may include encryption devices, |
| 12 | chips, and circuit boards.  Data security software of |
| 13 | digital code may include programming code that creates |
| 14 | "test" keys or "hot" keys, which preform certain |
| 15 | pre-set security functions when touched.  Data security |
| 16 | software or code may also encrypt, compress, hide, or |
| 17 | "booby-trap" protected data to make it inaccessible or |
| 18 | unusable, as well as reverse the progress to restore |
| 19 | it; |
| 20 | j. "Internet Protocol address" or "IP address" refers to a |
| 21 | unique number used by a computer to access the |
| 22 | Internet.  IP addresses can be dynamic, meaning that |
| 23 | the Internet Service Provider (ISP) assigns a different |
| 24 | unique number to a computer every time it accesses the |
| 25 | Internet.  IP addresses might also be static, if an ISP |
| 26 | assigns a user's computer a particular IP address which |
| 27 | is used each time the computer accesses the Internet; |
| 28 | k. The terms "records," "documents," and "materials," as |

used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

1. "Minor " means any person under the age of eighteen years. (See 18 U.S.C. § 2256(1)).

**BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY**

6. Computers and computer technology have revolutionized the way in which individuals interested in child pornography interact with each other. Child pornography formerly was produced using cameras and film (either still photography

6

or movies).  The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images.  There were definable costs involved with the production of pornographic images.  To distribute these on any scale required significant resources.  The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public.  The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls.

7. The development of computers has changed this.  Computers basically serve four functions in connection with child pornography and related offenses:  production, communication, distribution, and storage of the images.

8. Child pornographers can now transfer photographs from a camera onto a computer-readable format with a device known as a scanner.  With the advent of digital cameras, the images can now be transferred directly onto a computer.  A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.

9. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very

7

1  high resolution.

2  10.  The Internet and its World Wide Web afford collectors
3       of child pornography several different venues for
4       obtaining, viewing, and trading child pornography in a
5       relatively secure and anonymous fashion.
6  11.  Collectors and distributors of child pornography also
7       use online resources to retrieve and store child
8       pornography, including services offered by Internet
9       Portals such as Yahoo! and Hotmail, among others.  The
10      online services allow a user to set up an account with
11      a remote computing service that provides e-mail
12      services as well as electronic storage of computer
13      files in any variety of formats.  A user can set up an
14      online storage account from any computer with access to
15      the Internet.  Evidence of such online storage of child
16      pornography is often found on the user's computer.
17      Even in cases where online storage is used, however,
18      evidence of child pornography can be found on the
19      user's computer in most cases.
20 12.  As is the case with most digital technology,
21      communications by way of computer can be saved or
22      stored on the computer used for these purposes.
23      Storing this information can be intentional, i.e., by
24      saving an e-mail as a file on the computer or saving
25      the location of one's favorite websites in, for
26      example, "bookmarked " files.  Digital information can
27      also be retained unintentionally, e.g., traces of the
28      path of an electronic communication may be

8

automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints " in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

## DETAILS OF THE INVESTIGATION

13. On March 31, 2008, an undercover employee (hereinafter referred to as UCE) with the Australian Federal Police (AFP) conducting a covert online investigation within an Internet Relay Chat (hereinafter referred to as "IRC") room titled, "#0!!!!!!!!pedomoms" on the "Undernet" servers. While in the IRC chat room, the UCE engaged in a conversation with an unknown person (hereinafter referred to as U/P) using the nickname: "VeryOpenMind". The IP address used by the U/P was 70.222.180.205. During the conversation in IRC, the U/P stated that he wished to trade on the Google Hello program. The U/P added the UCE's undercover account to his friends list. The suspect's Google Hello account

9

| | |
|---|---|
| 1 | username was "Xynner", with Google Hello id 4579536, |
| 2 | and e-mail address: mynanoname@hotmail.com. |
| 3 | 14. While conversing with AFP UCE in Google Hello, the U/P |
| 4 | stated that his name was Drake, and that he was a |
| 5 | private first class in the United States Army stationed |
| 6 | in Georgia on an Army base. U/P stated that he had a |
| 7 | son who was 2 1/2 years old whom he was sexually |
| 8 | molesting with his girlfriend, who was the son's |
| 9 | mother. U/P stated that he has sexual relations with a |
| 10 | number of family members, including his niece who was |
| 11 | five or six years old. U/P has a friend, Siren, who |
| 12 | was a "pedo" and who was about to have a child, and the |
| 13 | U/P was considering asking Siren to abuse the child |
| 14 | together. |
| 15 | 15. The U/P sent 184 images to AFP UCE, 77 of which were |
| 16 | saved by the Google Hello program. Preliminary |
| 17 | assessment by the AFP confirms many of the images are |
| 18 | child exploitation material. U/P sent AFP UCE |
| 19 | photographs of himself, his partner, son, sister, and |
| 20 | niece. |
| 21 | 16. On March 31, 2008, the AFP made an urgent official |
| 22 | referral to the Federal Bureau of Investigation (FBI) |
| 23 | Legal Attache (LEGAT) located in Canberra, Australia. |
| 24 | 17. On April 2, 2008, Google Inc. responded to an |
| 25 | administrative subpoena served by the FBI, which |
| 26 | indicated that on April 30 to 31, 2008, one of the IP |
| 27 | addresses used to access the Google Hello account of |
| 28 | Xinner was 70.222.180.205. |

18. On April 2, 2008, Hotmail responded to an administrative subpoena served by the FBI, which indicated that the last IP address which accessed the e-mail address mynanoname@hotmail.com (associated with the Google Hello account of Xinner) was 70.222.180.205.

19. On April 3, 2008, Verizon Wireless responded to an administrative subpoena served by the FBI, which indicated that on March 31, 2008 at 00:34:58 and 06:19:49 PDT, the IP address 70.222.180.205 was assigned to the account of Verizon customer Matthew T Mercer (hereinafter referred to as "Mercer"), billing address of 61 East Street, Oxford, Michigan 48371.

20. On April 14, 2008, an analysis was conducted by the Child Victim Identification Program (hereinafter referred to as "CVIP") and the National Center for Missing and Exploited Children (hereinafter referred to as "NCMEC"). Two files were identified as containing child victims who have been identified by law enforcement, listed as:

   a. /xynner/Images received/giga/3sis21.jpg - which shows an adult male having vaginal intercourse with a young female. The photo displays from approximately the top of the stomach down on both the male and female.

   b. /xynner/Images received/giga/child anal fuck cum piss 0001a.JPG - which depicts a young girl lying topless on her back and wearing a pink dress with flowers on it.

21. On or about April 29, 2008, an FBI Special Agent in Columbus, Georgia made contact with officials of the

11

United States Army, who advised that on March 31, 2008, Mercer was located at Ft. Benning in Georgia, where he resided in barracks. On April 22, 2008, Mercer departed the military base for his home of record, 61 East Street, Oxford, Michigan as he was in the process of being discharged from the Army.

22. On April 28, 2008, your affiant reviewed police reports taken by Officers of the Oxford Police Department (OPD) related to Mercer. On one OPD report, Mercer provided his nickname as "Drake".[1]

23. On April 28, 2008, your Affiant pulled a drivers license photograph for a female (hereinafter referred to as "Female 1") who was listed as Mercer's girlfriend and/or mother of his child in numerous OPD reports. Based on your affiants experience as an investigator, this female resembles the same female who appeared in pictures sent by "Xynner," and whom "Xynner" told the AFP UCE was the mother of his child.

24. On April 29, 2008, a female relative (hereinafter referred to as "FR") of Mercer's filed a police report with the Oxford Police Department (hereinafter referred to as "OPD"). While at OPD, FR told the OPD Officer that Matthew Mercer was residing at 61 East Street, Oxford, Michigan with her.

25. On April 30, 2008, the AFP UCE made additional contact with Xynner through the Google Hello program, who sent

---

[1] It should be noted that this is the same name used by "Xynner" during his online chat with the AFP UCE

12

approximately 100 images to the AFP UCE. The images sent to the AFP UCE appeared to the AFP UCE to be of children, in some cases younger than those sent in the first session.

26. On May 12, 2008, your Affiant reviewed the images sent by Xynner to the AFP UCE. The images were sent to your Affiant by FBI Special Agents located in the FBI Legal Attache in Canberra, Australia. Based on your Affiants review, numerous images appeared to depict young children engaged in oral sex, or sexual intercourse, with older men. One picture appeared to include an infant wearing a "onesy" lying on her back, being manually manipulated by an adult male who appeared to be having sexual intercourse with her.

27. On May 12, 2008, your affiant reviewed chat logs between the AFP UCE and Xynner. During the chat Xynner indicated that he was out of the United States Army entirely and was located in the State of Michigan. Xynner indicated that as soon as he got a digicam, his first mission is to take pictures of his son. During the chat, Xynner stated that he was hesitant to give out his home address as he was "worried about the whole law enforcement side of the coin."

28. On May 12, 2008, Verizon Wireless was served with a Court Order seeking cell tower information related to an air card with telephone number (248) 820-9175[2].

---

[2]This is the air card number belonging to Matthew Mercer, which was provided by Verizon Wireless pursuant to a Grand Jury Subpoena. This number was used to send the

|   |     |   |
|---|-----|---|
| 1 |     | Heather, an employee of Verizon Wireless, advised that |
| 2 |     | on both April 30, 2008 and May 1, 2008, the air card |
| 3 |     | assigned to Matthew Mercer was using a cell tower |
| 4 |     | located at 645C North Oxford Road, Oxford, MI. This |
| 5 |     | location is approximately one (1) mile from the |
| 6 |     | residence 61 East Street, Oxford, MI. |
| 7 | 29. | The above information indicates that on March 31, 2008, |
| 8 |     | Mercer, while residing at the United States Army Base |
| 9 |     | Ft. Benning in Georgia, and on April 30, 2008, Mercer, |
| 10 |    | while residing at the address 61 East Street, Oxford, |
| 11 |    | Michigan 48371, knowingly promoted and presented child |
| 12 |    | pornography in interstate and foreign commerce by means |
| 13 |    | of a computer in violation of Title 18 Section |
| 14 |    | 2252(a)(3)(B). The pornographic images described |
| 15 |    | herein were transmitted via the Internet to the AFP |
| 16 |    | UCE. |

## CONCLUSION

30. Based on the above information, I believe that probable cause exists to believe Matthew Mercer, knowingly possessed, presented, promoted, and/or transmitted child pornography, in interstate and/or foreign commerce, by means of a computer, and in doing so violated Title 18, USC Sections 2252A(a)(3)(B) and 2252(a)(1)(B).

---

pictues to the AFP UCE on March 31, 2008.

14

31. Title 18, USC Section 2252A(a)(3)(B) prohibits anyone from knowingly advertising, promoting, presenting, distributing, or soliciting through the mails, or in interstate or foreign commerce by any means, including by computer, any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe that the material or purported material is, or contains obscene visual depiction of a minor engaging in sexually explicit conduct or visual depiction of an actual minor engaging in sexually explicit conduct. Title 18, USC Section 2252(a)(1)(B) prohibits any person from knowingly transporting or shipping in interstate or foreign commerce by any means, including by computer or mails, any visual depiction, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct.

32. Title 18, USC Section 2252(a)(2) prohibits any person from knowingly receiving, or distributing any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if the producing of such visual depiction involves the use of a minor engaging in

15

sexually explicit conduct; and such visual depiction is of such conduct.

33. Based on the facts related in this affidavit, I respectfully request this court issue an arrest warrant authorizing the arrest of Matthew Mercer, aka Matthew Mercer-Kinser.

FURTHER AFFIANT SAYETH NOT.

Brett E. Leatherman
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 20th day of May, 2008.

Mona K. Majzoub
U.S. Magistrate Judge

16